**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RIA R SQUARED, INC.,

Plaintiff,

v.

DW PARTNERS, LP, DW 80 SOUTH, LLC, DW MARCY, LLC, and DW COMMERCIAL REAL ESTATE, LLC,

Defendants.

Case No. 1:26-cv-06864-VM

ECF Case

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF MOTION TO REMAND**

## PRELIMINARY STATEMENT[1]

RIA "contests at least two required elements" (Opp. 1) of mandatory abstention—whether its claims are core and whether the Commercial Division can timely adjudicate them—and concedes the other four: timeliness, state-law claims, commencement in state court, and that "RIA does not rely on diversity or another jurisdictional basis independent of § 1334." (Opp. 4, 18.) The two disputed elements cut Defendants' way too. Once a removed action is non-core, a district court "could refuse to abstain only if the lawsuit could not be timely adjudicated in state court." *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447 (2d Cir. 2005). RIA's claims—pre-petition claims in the suit since 2022—and the Commercial Division, having just denied RIA a discovery stay, was enforcing its schedule the week RIA removed.

RIA removed on the ground that this action is "related to" its bankruptcy—that is, non-core—and nothing more. (ECF 2 ¶ 6; *see Empery Tax Efficient, LP v. MusclePharm Corp.*, 2023 WL 2580006, at *5 (S.D.N.Y. Mar. 21, 2023) (Marrero, J.) ("'related to' claims are 'non-core' proceedings").) Facing this motion, RIA now calls the claims core, on two grounds: (a) the claims are "one of the largest assets" in RIA's bankruptcy estate, "representing roughly 26% of total scheduled assets" (Opp. 1); and (b) the claims' outcome "will materially affect creditor recoveries, the plan of reorganization, and the overall administration of the Estate." (*Id*. 8.) But a claim is not core because its outcome matters to the estate; if it were, no debtor's affirmative claim would be non-core. The Second Circuit rejected that reading in *Orion*, where a $77 million contract claim whose outcome "could determine Orion's continued viability as an enterprise" still was non-core.

[1] Unless otherwise noted, all emphasis is added, and all internal citations and quotations are omitted. The Reply uses the following abbreviations: "Br." and "Decl." refer to Defendants' opening memorandum (ECF 9) and the Tishyevich Declaration (ECF 10); "Opp." refers to RIA's opposition (ECF 14); "Supp. Decl." is the supplemental Tishyevich declaration submitted herewith; and "Order" refers to the Bankruptcy Court's October 2, 2026 Order Granting Relief from Automatic Stay (Supp. Decl. Ex. 21).

*In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993). RIA's own authority agrees with the distinction: *Diligent* treated claims as core because they arose from post-petition agreements, bankruptcy financing, and bankruptcy-court orders—facts RIA concedes are absent here (Opp. 9, 24)—and it applied the § 1412 presumption and forum-clause rule to core proceedings only. *Diligent Enter. Mgmt., LLC v. AML Glob. Eclipse, LLC*, 2025 WL 1502032, at *9–10 & n.8 (S.D.N.Y. May 27, 2025).

As for size, RIA points to "the size and centrality" of its claims (Opp. 1)—but the "$178 million" is RIA's own number. RIA invested "approximately $39 million" in the three transactions. (Kang Decl. ¶ 15.) The $178 million is the figure at which RIA "values" its claims for "damages, disgorgement, punitive damages, and other relief" (*id.* ¶ 16)—roughly 4.5 times its investment—and neither the Kang Declaration nor the Opposition explains how. RIA's own transfer brief put its "direct investment losses" at "tens of millions of dollars." (ECF 11-1 at 2.)

On timeliness, RIA says "the case was not trial-ready at removal." (Opp. 10.) The case need not be trial-ready; the statute asks whether the action "can be timely adjudicated" in state court, 28 U.S.C. § 1334(c)(2), "a case- and situation-specific inquiry." *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011). The record answers this question. A week after RIA's petition, Justice Schecter declined RIA's request to "postpone and reschedule the discovery deadlines," ordered firm deposition dates by August 14, and ruled that "unless and until this action is actually removed, all deadlines remain in effect and will be enforced." (Decl. Exs. 13, 14 [NYSCEF 221].) RIA removed on August 11, the day Defendants asked for a date for Mr. Kang's deposition. (Decl. Ex. 16.) And the Bankruptcy Court has since found that letting RIA's other New York action proceed "will not result in great prejudice to the bankruptcy estate or the Debtor." (Order ¶ 10.) On these facts, the statute's "shall abstain" directive applies.

## ARGUMENT

### I. RIA's Claims Are Non-Core, and Its Third Theory Would Make Every Debtor's Lawsuit a Core Proceeding.

A breach-of-contract action "by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core," *Orion*, 4 F.3d at 1102, and such claims "are not rendered core simply because they involve property of the estate." *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999). RIA bears the burden of sustaining the jurisdiction it invoked (Br. 6-8), but on this element, RIA's own filings resolve the question.

#### A. RIA's theory of core status has changed with each motion.

RIA has offered three theories of whether its claims are core, each shifting with the motion that needed it. "[R]elated to" was enough to remove. (ECF 2 ¶ 6.) When RIA moved to transfer and needed § 1412 and the *Manville* presumption, the claims became core "[b]ecause the claims are estate property." (ECF 11-1 at 5.) In that same brief, RIA described the claims as ones that "existed prepetition" and "belong solely to RIA as plaintiff," with "[n]o claims or counterclaims . . . asserted against RIA" (*id.* at 1)—the definition of a non-core proceeding in *Orion*, 4 F.3d at 1102. Now facing mandatory abstention, RIA asks this Court to find the claims core on a third theory: that their outcome "will materially affect creditor recoveries" and estate administration. (Opp. 8.)

Three filings, three theories, with the underlying facts unchanged. RIA's first instinct—"related to" and nothing more—was the right one. (ECF 2 ¶ 6; Opp. 1.).

#### B. *U.S. Lines* does not reach a debtor's affirmative pre-petition claims.

RIA says its claims fall within *U.S. Lines*'s second category—proceedings that "directly affect[] a core bankruptcy function"—because their disposition affects "plan formulation, the allocation of creditor recoveries, and administration of the Estate." (Opp. 8.) In *U.S. Lines*, the

insurance proceeds were "almost entirely earmarked for paying the personal injury claimants," so construing the policies "directly affect[ed] the bankruptcy court's core administrative function of asset allocation among creditors." 197 F.3d at 638–39.

But as the Second Circuit explained, citing *Orion*, proceeds that "would only augment the assets of the estate for general distribution" do not qualify as core. *Id.* at 638. "Allocation" in *U.S. Lines* meant dividing earmarked proceeds among claimants; RIA's "allocation of creditor recoveries" (Opp. 8) means enlarging the pool. And that type of asset augmentation is the only bankruptcy consequence RIA identifies here: "[a]ny recovery on the DW claims would increase the assets available to fund a plan and distributions to creditors." (Kang Decl. ¶ 20.) That is *Orion*, not *U.S. Lines*, and the rule *Diligent* itself recites. 2025 WL 1502032, at *6. Defendants have asserted no counterclaim and filed no proof of claim before the September 23, 2026 bar date. (Decl. ¶¶ 24, 30; Decl. Ex. 18; Supp. Decl. ¶ 22.)

What remains is "related to" jurisdiction under RIA's own definition—a proceeding whose "outcome could alter the debtor's rights, liabilities, options, or freedom of action and affect the handling or administration of the estate." (Opp. 9–10.) "Arguments predicated on effects on a bankruptcy estate sound in 'related to' jurisdiction, and as such do not betoken a core bankruptcy proceeding." *Joseph & Kirschenbaum LLP v. Tenenbaum*, 2020 WL 242374, at *4 (S.D.N.Y. Jan. 16, 2020). RIA's fallback—that the claims are "at minimum, closely related to RIA's Chapter 11 case" (Opp. 9)—all but concedes the non-core nature of the claims.

### C. RIA concedes away *Diligent*'s premise.

The claims in *Diligent* arose in the bankruptcy: a post-petition letter agreement resolving an impasse over the plan, an intercreditor dispute that was already before the bankruptcy court, and tort claims based on the sale order and DIP financing. 2025 WL 1502032, at *6–9. RIA concedes twice that its claims here are different in kind: "RIA does not contend that the DW

claims arise from comparable post-petition conduct or bankruptcy-court orders" (Opp. 9); and "[u]nlike *Diligent*, the DW claims do not arise from a bankruptcy sale, post-petition financing, or a bankruptcy-court order." (*Id*. 24.) *Diligent* applied § 1412 (which governs transfer for "core bankruptcy proceedings"), and a "per se rule" for forum-selection clauses that was relevant because "Diligent's action is a core proceeding." 2025 WL 1502032, at *9 & n.8, *10. Those holdings do not apply here—which is why RIA's transfer theory depends on the "core" label. (Point IV.)

**D. The Kang Declaration provides conclusions, not facts.**

RIA's evidence is four paragraphs of conclusions. RIA asserts that the claims' "prosecution, valuation, settlement, or abandonment will materially affect creditor recoveries, RIA's liquidity, the formulation of a plan of reorganization, the viability of RIA's reorganization, and the overall administration of the estate" (Kang Decl. ¶ 19)—but RIA does not provide any plan, disclosure statement, or dates to support these assertions. These conclusions are not facts but argument, for which affidavits "shall not be used as a vehicle"; "[s]uch submissions will not be considered." Individual Practice II.E.1.

**II. The Commercial Division Can Timely Adjudicate this Action.**

RIA reframes the sixth element as "whether state-court adjudication would timely serve the needs of an active Chapter 11 case." (Opp. 10.) The *Parmalat* factors ask something narrower: the state court's pace, and whether the litigants "need the state law claims to be quickly resolved as a result of the status of the ongoing title 11 bankruptcy proceeding." 639 F.3d at 580-81. Here, the state court has answered the first question, and the Bankruptcy Court the second.

**A. The state court was enforcing its schedule when RIA removed.**

On May 12, 2026, Justice Schecter ordered fact depositions completed by September 16 and the note of issue filed by September 30. (Decl. Ex. 9 [NYSCEF 219].) On July 22, a week

after the bankruptcy petition, RIA asked her "to postpone and reschedule the discovery deadlines in this case until such time as removal is litigated and resolved"; Defendants said they would "oppose removal, [and] seek remand." (Decl. Ex. 13.) On July 23, Justice Schecter declined—"unless and until this action is actually removed, all deadlines remain in effect and will be enforced. The court declines to extend any of the deadlines"—and ordered "firm dates for all fact depositions" by August 14. (Decl. Ex. 14 [NYSCEF 221].) Defendants completed their production on August 7, and on August 11 proposed dates for Mr. Kang's deposition; RIA removed that same day. (Decl. ¶ 27; Decl. Ex. 16; ECF 1-2.) On the schedule before Justice Schecter, summary judgment motions were due within 60 days of the note of issue—by the end of November 2026. (Part 54 Rule 51 (Decl. Ex. 9 ).) This is a court "ready, willing, and able" to "finish quickly what it started." *GE Oil & Gas, LLC v. Turbine Generation Servs., LLC*, 2019 WL 2008575, at *7 (S.D.N.Y. May 7, 2019) (remanding a debtor's removal of its own claim). Now, however—ninety days after removal—no deposition has been taken and no note of issue has been filed: in effect, the postponement RIA requested on July 22 and was denied on July 23.

**B. The record answers RIA's "not trial-ready" assertion.**

RIA's opposition calls this action not trial-ready four times and "nascent" once. (Opp. 5, 10, 17, 19, 26.) Defendants see it differently. By removal, Justice Schecter had decided two rounds of motions to dismiss (Decl. Ex. 7 [NYSCEF 178]); the First Department had reviewed the complaint and reinstated some claims (Decl. Ex. 8 [NYSCEF 184]); RIA had filed its third complaint (Decl. Ex. 4 [NYSCEF 198]); RIA had noticed and taken the depositions of three DW corporate designees on September 11, 2025 (Decl. ¶ 25); and Defendants had completed their document production (*id.* ¶ 27). The First Department does not review complaints in "nascent" cases; this action had advanced materially. What was left was Mr. Kang's deposition, the note of issue, and summary judgment by November 2026—all in one court. RIA's federal path requires

two: a bankruptcy court limited to "non-binding proposed findings," *One William St. Cap. Master Fund Ltd. v. Wilmington Tr., Nat'l Ass'n*, 2026 WL 1622927, at *5 (S.D.N.Y. June 5, 2026), and a district court for trial (Opp. 18).

### C. The Bankruptcy Court found that New York litigation of another RIA prepetition dispute does not prejudice the estate.

RIA says the Chapter 11 filing "introduced bankruptcy-specific issues that the state court cannot coordinate." (Opp. 11.) It made the same argument to the Bankruptcy Court, which found otherwise. (Order ¶ 10.) On Shinhan's motion for relief from the stay to litigate RIA's December 2024 New York action (*id.* ¶¶ 2–3, 13), the court found that "permitting the New York Action to proceed will not result in great prejudice to the bankruptcy estate or the Debtor"; that "[t]he Debtor chose to litigate the parties' dispute in New York, where the proceedings are already far advanced"; and that RIA's "bankruptcy-specific issues . . . may be reserved for determination by this Court, if necessary, without preventing the New York court from resolving the parties' prepetition dispute" (*id.* ¶ 10).[2] Shinhan, moreover, held counterclaims against RIA, which the stay reached (*id.* ¶ 2); in contrast, "there are no claims against [RIA] in this action." (Decl. Ex. 14 [NYSCEF 221].) If the home Bankruptcy Court will not require a case with claims against RIA's estate to travel to Miami, there is even less reason to send one without them.

### D. Nothing in the bankruptcy requires resolution by a date certain.

*Parmalat*'s example of a trustee who "may require expeditious resolution of the state law claims in order to determine what resources are available to fund the" plan, 639 F.3d at 581, has

---

[2] RIA removed the Shinhan action as well (Kang Decl. ¶ 13) and, before any remand motion was filed, obtained its transfer to Florida on a proposed order providing that "[n]othing in this Order determines whether any claim is core or non core." No. 26-cv-06748 (S.D.N.Y. Aug. 27, 2026), ECF 12 ¶ 3. Shinhan's remand motion (*id.*, ECF 13) was referred to the Bankruptcy Court, No. 26-cv-26217 (S.D. Fla. Sept. 15, 2026), ECF 17 n.1, where it was pending when the Order issued. (Supp. Decl. Exs. 23–25.)

no analogue here. RIA's evidence is that Mr. Kang is "directly involved in discussions" (Kang Decl. ¶ 21); and RIA told the state court that its claims "will be resolved as part of Plaintiff's plan" (Decl. Ex. 13)—a plan that is not waiting for this case. Estates are "routinely administered even in the face of contingent or unliquidated claims," *One William St.*, 2026 WL 1622927, at *6, and because Defendants hold no claim against the estate (Point I.B), a remand prolongs nothing. The home court itself declined an evidentiary hearing of its own because it "would only further delay resolution of the underlying dispute between the parties." (Order ¶ 7.)

## III. The Equitable Factors, as RIA Has Framed Them, Favor Remand.

### A. Factors one, six, seven, and eight are Kang ¶ 19 restated.

RIA says factors one, six, seven, and eight "strongly favor retention." (Opp. 14–15.) Each rests on Kang Declaration paragraphs 16, 19, and 26, and restates the "related to" showing addressed in Point I—a showing that RIA's own principal authority declined to weigh. *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 147 n.52 (Bankr. S.D.N.Y. 2002) (it "may well be the case" that stakeholder recoveries would be "affected . . . by the outcome of this litigation," but "[t]his litigation necessarily must be determined on its merits, and not on its effect on stakeholders in the Adelphia cases").

Factors seven and eight add nothing: there is no core proceeding whose "substance" to examine, and no one proposes severing anything. RIA's point that the Flushing Assignment has no forum-selection clause (Opp. 24–25) is a reason to keep the six claims together, as they have been since 2022.

### B. The forum-shopping record concerns August 11; the Kang Declaration concerns July 15.

RIA says there is "not a shred of evidence to suggest that removal was sought to gain a litigation advantage," citing Kang Decl. ¶¶ 6–10. (Opp. 2; *see id.* 16.) Those paragraphs explain

the petition; ¶ 9 is keyed to "the Petition Date"; and ¶ 12 states that RIA "removed this action on August 11, 2026," but nothing about why that day. The record does (Point II.A). RIA removed on August 11—"nearly three weeks" (in RIA's own words, Opp. 2) before the August 31 date it had given the state court (Decl. Ex. 13); three days before the court's deadline for deposition dates; and hours after Defendants asked for one. (Decl. Exs. 14, 16.) The Kang Declaration twice refers to "my previously scheduled deposition" (Kang Decl. ¶¶ 7–8), but none had been scheduled; the August 14 submission was to schedule it. (Decl. ¶ 28.)

RIA's own *Laurel Highlands* case found forum shopping where "Laurel chose the forum when it commenced the state court action," and the parties "litigated for approximately nine months in that forum until Laurel asserted that the court's orders created an inconvenience and removed the action." *In re Laurel Highlands Found., Inc.*, 473 B.R. 641, 661 (Bankr. W.D. Pa. 2012). RIA chose the Commercial Division forum, litigated in it for more than four years, and removed under a scheduling order the court had just declined to extend. A "centralization strategy" announced on July 22 (Kang Decl. ¶ 12) explains why RIA would remove eventually. It does not explain why RIA removed on August 11, and the Kang Declaration does not try.

**C. *Adelphia* does not carry the weight RIA puts on it.**

*Adelphia* (Opp. 16–19) was a creditor's suit against debtor-defendants that turned on "the assumption or rejection of the Recap Agreement" question pending before the same bankruptcy court—a court with "no involuntarily removed defendants; all defendants in the action . . . prefer this court." 285 B.R. at 145-47. Here, every Defendant was involuntarily removed and seeks remand; no claim runs against the debtor; and the home court has said its issues "may be reserved" (Order ¶ 10).

### D. The conceded factors decide the balance.

RIA concedes factors two and five in substance. (Opp. 4, 18.) Its answer on factor eleven, "the district court may conduct the trial" (*id.* 18), is the two-court structure above; and on factor twelve, every Defendant is a non-debtor with no claim. (Decl. ¶¶ 24, 30.) Factors two, five, and twelve are three of the four this Court weighed "heavily in favor of the Court abstaining" in *Empery*, 2023 WL 2580006, at *13; the fourth is forum shopping. Equitable remand adds prejudice to "the involuntarily removed defendants," *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011), and comity, whose interests "are promoted by allowing the claims to remain where the plaintiffs elected to bring them," *Simpson v. Chassen*, 2026 WL 1584643, at *2 (S.D.N.Y. June 3, 2026)—where a debtor-plaintiff's attempt to remove his own three-year-old Commercial Division action made the prejudice factor one that "cries out" for abstention. *Id.*

## IV. The Forum-Selection Clauses Matter to the Transfer Motion, Where RIA Concedes They Carry "Substantial Weight."

Defendants did not argue that the clauses barred removal to this Court (Br. 23), and RIA's Points III.A and III.B (Opp. 20–22) answer an argument no one made. Defendants' point was that the clauses "foreclose every forum the parties did not choose contractually." (Br. 23.) RIA's answer depends on core status. *Diligent*, *Iridium*, and *Manville* are core-proceeding cases—*Diligent*, 2025 WL 1502032, at *9 & n.8; *In re Iridium Operating LLC*, 285 B.R. 822, 836–37 (S.D.N.Y. 2002) (forum clause yields only "where the dispute is core"); *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389–91 (2d Cir. 1990)—and for non-core claims, RIA concedes "the case-specific balancing applicable under § 1404(a), including the substantial weight ordinarily afforded to a valid forum-selection clause" (Opp. 25), on which RIA bears the burden "by clear

and convincing evidence" (ECF 11-1 at 8). The remaining arguments are for RIA's transfer motion.[3]

## CONCLUSION

For the reasons stated above and in Defendants' opening memorandum, the Court should abstain under 28 U.S.C. § 1334(c)(2) and remand this action to the Supreme Court of the State of New York, New York County, Commercial Division, Index No. 651101/2022, or, in the alternative, abstain under 28 U.S.C. § 1334(c)(1) and remand under 28 U.S.C. § 1452(b).

Dated: November 9, 2026
New York, New York.

Respectfully submitted,

By: */s/ Dmitriy Tishyevich*

Dmitriy Tishyevich
**McDERMOTT WILL & SCHULTE LLP**
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
dtishyevich@mcdermottlaw.com

*Counsel for Defendants DW Partners, LP, DW 80 South, LLC, DW Marcy, LLC, and DW Commercial Real Estate, LLC*

[3] RIA's Point IV (Opp. 25–27) argues the merits of its transfer motion, which the parties agreed on September 22 to hold pending decision on remand (ECF 12), as the Court has ordered (ECF 17). Defendants reserve all responses for any briefing the Court may direct on that motion.

**CERTIFICATE OF COMPLIANCE**

I, Dmitriy Tishyevich, hereby certify that this memorandum of law complies with the word count limitations of the Local Civil Rules of the Southern District of New York. Excluding the portions of the document exempted by Local Civil Rule 7.1 (*i.e.*, the caption, table of contents, table of authorities, signature blocks, and the certificates), this document contains 3,500 words.

*/s/ Dmitriy Tishyevich*
Dmitriy Tishyevich

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2026, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notice of the Filing to counsel of record.

*/s/ Dmitriy Tishyevich*
Dmitriy Tishyevich